CLERK US DISTRICT COURT
NORTHERN DIST. OF TX
FILED

2020 JAN 27  AM 8: 40

DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

FIDEL SALAZAR, §
Institutional ID No. 1506617, §
SID No. 3924280, §
§
Plaintiff, §
§ CIVIL ACTION NO. 5:19-CV-124-BQ
v. §
§
U.T.M.B. C.M.C., *et al.*, §
§
Defendants. §

## REPORT AND RECOMMENDATION

Pro se Plaintiff Fidel Salazar filed this 42 U.S.C. § 1983 action on June 25, 2019, alleging violations of his constitutional rights while incarcerated within the Texas Department of Criminal Justice (TDCJ). Salazar alleges Defendants have deliberately denied treatment for his serious medical condition (i.e., Hepatitis C) by choosing a course of monitoring instead of prescribing new direct-acting antiviral medications. Compl. 3–4, ECF No. 1.[1] Salazar also claims TDCJ's Hepatitis C treatment policy follows outdated medical standards, thereby violating the Eighth Amendment. *Id.* He seeks monetary damages and injunctive relief. *Id.* at 4.

The United States District Judge transferred this case to the undersigned United States Magistrate Judge for further proceedings. ECF No. 7. The undersigned thereafter reviewed Salazar's Complaint and authenticated records from TDCJ, and ordered Salazar to complete a questionnaire pursuant to *Watson v. Ault*, 525 F.2d 886, 892–93 (5th Cir. 1976). ECF No. 19. Salazar timely completed and returned the questionnaire. ECF Nos. 20, 22, 26.

---

[1] Page citations to Salazar's pleadings refer to the electronic page number assigned by the Court's electronic filing system.

Not all parties have consented to proceed before the undersigned magistrate judge. In accordance with the order of transfer, the undersigned makes the following Report and Recommendation to the United States District Judge.

## I.    Standard of Review

A court must dismiss a complaint filed by a prisoner against a government entity or employee if the court determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b) (applying section to any suit by a prisoner against certain governmental entities, regardless of whether the prisoner is proceeding *in forma pauperis*). A frivolous complaint lacks any arguable basis, either in fact or in law, for the wrong alleged. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint has no arguable basis in fact if it rests upon clearly fanciful or baseless factual contentions, and similarly lacks an arguable basis in law if it embraces indisputably meritless legal theories. *See id.* at 327; *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005). When analyzing a prisoner's complaint, the court may consider reliable evidence such as the plaintiff's allegations, responses to a questionnaire, and authenticated prison records. *See Wilson v. Barrientos*, 926 F.2d 480, 483–84 (5th Cir. 1991); *see also Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999) (explaining that responses to a questionnaire or testimony given during an evidentiary hearing are incorporated into the plaintiff's pleadings); *Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995) (holding that courts may dismiss prisoners' *in forma pauperis* claims as frivolous based on "medical or other prison records if they are adequately identified and authenticated").

In evaluating the sufficiency of a complaint, courts accept well-pleaded factual allegations as true, but do not credit conclusory allegations or assertions that merely restate the legal elements

of a claim. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016). And while courts hold pro se plaintiffs to a more lenient standard than lawyers when analyzing complaints, such plaintiffs must nevertheless plead factual allegations that raise the right to relief above a speculative level. *Id.* (citing *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002)).

## II.   Discussion

### A.   Salazar's Claims

In his Complaint, Salazar names the following individuals as Defendants: (1) "U.T.M.B. C.M.C."—i.e., University of Texas Medical Branch Correctional Managed Care (UTMB-CMC); (2) Michael Parmer, Formby Unit medical supervisor; (3) Melonie Sandoval, Formby Unit provider; and (4) "unknown" Doe Defendants. Compl. 1, 3. In his questionnaire responses, Salazar also named as Defendants J. Parmenter, TDCJ Estelle Unit Provider Mark Barber, and Lynaugh Unit Provider Tally.[2] Questionnaire 11, 16.

Salazar alleges he suffers from Hepatitis C. *Id.* at 4. Salazar contends that Parmer, Sandoval, and Does have deliberately "denied Hep C treatment/cure" of his choice—direct-acting antiviral (DAA) medication. Compl. 3; *see* Questionnaire 12, 14–17. Salazar further asserts that UTMB-CMC's current protocol violates his Eighth Amendment rights. Compl. 3. Specifically, Salazar avers that UTMB-CMC's "policy of using an APRI score . . . to predict the presence of cirrhosis along with other criteria for referral and evaluation for possible treatment" contravenes the prevailing standard of care. Questionnaire 7. Salazar believes that UTMB-CMC should not rely on the APRI[3] score but should instead use liver biopsies, FIB-4 tests, or FibroScans to evaluate

---

[2] By separate order, the Court has severed and transferred Salazar's claims against Defendants Barber and Tally because they are not proper in this division.

[3] APRI stands for AST-to-platelet ratio index. *See AST to Platelet Ratio Index (APRI) Calculator*, Univ. of Wash., https://www.hepatitisc.uw.edu/page/clinical-calculators/apri (last visited Jan. 13, 2020).

his condition. *See id.* Salazar's pleadings imply, however, that regardless of what these alternative tests reveal, TDCJ should prescribe him DAA medication because he is at "risk of developing cirrhosis and liver cancer" and "medical research has demonstrated the . . . dramatic benefits of treating all persons with chronic [Hepatitis C]." *Id.* at 13. Salazar claims that as a result of UTMB-CMC's policy, Defendants have based their "treatment decisions on cost rather than on treatment . . . ." *Id.* Salazar believes that Defendants' failure to prescribe DAA medication has caused him to suffer "chronic abdominal pain . . . dizziness, fatigue, headaches, [and] muscle weakness." *Id.* at 17.

**B.    Salazar's previously filed lawsuit.**

The Court is familiar with the claims Salazar makes herein. He previously filed an action alleging similar claims against the same defendants. *See Salazar v. U.T.M.B. Correctional Managed Care*, 5:17-cv-313-M-BQ (N.D. Tex. Dec. 29, 2017). The Court conducted a *Spears* hearing in that case (*id.* at ECF No. 39) and, liberally construing the claims in Salazar's Amended Complaint and his responses at the *Spears* hearing, interpreted Salazar's complaint as asserting a claim against John Doe defendants related to an alleged policy concerning criteria for treating Hepatitis C. *See id.* at ECF No. 40. The Court therefore directed the Office of the Attorney General for the State of Texas (AG) to "identify all individuals and/or entities responsible for creating, adopting, and/or modifying TDCJ's current policy concerning: (1) the treatment regimens available for inmates with Hepatitis C; and (2) the relevant criteria used by TDCJ to determine when and under what circumstances such modes of treatment are provided to inmates." *Id.* at 2–3.

In response, the AG averred that TDCJ's "policies for treating Hepatitis C are created and set by the Correctional Managed Health Care Committee" (CMHCC)—a "statutorily created

committee responsible for developing, implementing, and monitoring the correctional managed health care services for offenders." ECF No. 47, at 1. The AG further advised that the "CMHCC is comprised at any given time of individuals from TDCJ, UTMB, and Texas Tech University Health Sciences Center." *Id.* at 1–2. Based on the information provided, the Court further directed the AG to identify the individual committee members on the CMHCC responsible for creating and adopting the Hepatitis C policy at the time of Salazar's claims and directed that those individuals be served. ECF No. 50. After the Court ordered defendants to answer but before defendants responded, however, Salazar voluntarily moved to dismiss his case. *See id.* at ECF No. 53. Accordingly, on July 6, 2018, the Court dismissed Salazar's complaint without prejudice and directed the Clerk of Court to terminate the case. *Id.* at ECF No. 57.

**C.    Salazar's policy claim against the Doe Defendants survives preliminary screening but should be dismissed against all other Defendants.**

In this action, Salazar asserts that UTMB-CMC implemented a policy that violates his constitutional rights—namely, that UTMB-CMC's "protocol" is to monitor inmates with Hepatitis C rather than prescribe, as a matter of course, new direct-acting antiviral medication. *See* Compl. 3–4; Questionnaire 7–11. Although he attributes the policy to UTMB-CMC, Salazar contends that Defendants Sandoval, J. Parmenter, "Formby Medical Admin.," and "unknown def.s" implemented the policy. Questionnaire 11. For the reasons set forth below, the undersigned recommends that the district court dismiss Salazar's policy claim against all Defendants except for the Doe Defendants.

*1.    UTMB-CMC is not a proper defendant under 42 U.S.C. § 1983.*

Salazar seeks injunctive relief—provision of DAA medication—against UTMB-CMC. Compl. 3–4. "It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh

Amendment." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). UTMB-CMC is an agency of the State of Texas and is therefore immune from suit. *See Lewis v. Univ. of Tex. Medical Branch at Galveston*, 665 F.3d 625, 630 (5th Cir. 2011); *Jensen v. Thaler*, Civil Action No. H–13–2390, 2014 WL 2938383, at *5 (S.D. Tex. June 27, 2014) ("As an institution within the University of Texas System, UTMB is a state agency that enjoys the benefit of immunity from suit in federal court."). Salazar has not pleaded any facts demonstrating that UTMB-CMC, through the State of Texas, has waived its immunity. Moreover, the type of relief Salazar seeks— an injunction requiring UTMB-CMC to provide him with DAA medication—does not obviate the jurisdictional bar. *See Lewis*, 665 F.3d at 630 (rejecting prisoner's argument that UTMB was not immune from suit under the Eleventh Amendment because he sought prospective injunctive relief). UTMB-CMC is therefore immune from suit.[4]

In addition, UTMB-CMC is not a proper Defendant under § 1983. Section 1983 provides for liability against any *person* who, acting under color of law, deprives an individual of "any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983 (2017). Neither states nor state agencies—such as UTMB-CMC—are "persons" against whom a § 1983 claim for money damages can be asserted. *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 617 (2002) (citing *Will*, 491 U.S. at 66). Accordingly, the undersigned recommends that the district court dismiss Salazar's claims against UTMB-CMC.

---

[4] Salazar sues Defendants Parmenter, Sandoval, and Does in their official capacities. *See* Compl. 3; Questionnaire 15–17. A suit against state employees in their official capacities is essentially a suit against the State of Texas. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." (internal citation omitted)). Thus, for the same reason that UTMB-CMC is immune from suit, Defendants Parmenter, Sandoval, and Does possess immunity against any claims in their official capacities for money damages. *See id.; Anderson v. Abbott*, 83 F. App'x 594, 595 (5th Cir. 2003) (quoting *Pennhurst*, 465 U.S. at 100) ("The Eleventh Amendment bars a suit against state officials when the state is the real, substantial party in interest.").

    *2. Salazar has not stated a policy claim against Defendants Sandoval, J. Parmenter, and Formby Medical Admin.*

In response to the Court's question asking Salazar to name the individuals at UTMB-CMC "responsible for implementing the policy," Salazar listed the following: (1) Provider Sandoval; (2) Formby Medical Admin.; (3) J. Parmenter.[5] Questionnaire 11.

To the extent Salazar asserts that Defendants Sandoval and Parmenter, as well as certain Formby Unit medical administrative staff, implemented an unconstitutional policy, he cannot state a claim. Salazar has not pleaded any facts demonstrating that Defendants Sandoval, Parmenter, or the administrative staff have any policy-making authority. *See* Compl. 4. To the contrary, Salazar's pleadings indicate that Defendant Sandoval simply acted in accordance with the alleged unconstitutional policy. *See, e.g.*, Questionnaire 12 (claiming that he asked Defendant Sandoval to prescribe DAA medication, but she told him that his "APRI score [was] too low" so he "d[id] not qualify because of that"). With respect to Defendant Parmenter, Salazar avers that Parmenter merely responded to a grievance stating that Salazar did not qualify for DAA medication based on his APRI score. *See id.* And Salazar likewise did not assert any facts supporting his allegation that "Formby Medical Admin." is responsible for an unconstitutional policy. *See id.* at 7–11. For these reasons, any claim Salazar attempts to raise against Defendants Sandoval, Parmenter, and Formby Unit medical administrative staff based on an alleged unconstitutional policy should be dismissed. *See, e.g.*, *Marquez v. Quarterman*, Civil Action No. 9:09cv71, 2010 WL 1064421, at *6 (E.D. Tex. Mar. 18, 2010) (recommending dismissal of prisoner's claim that TDCJ maintained an unconstitutional denture policy where named defendants (including a dental assistant and a nurse) were not policymakers and had no authority "to modify or contravene TDCJ or UTMB

---

[5] Salazar also named Providers Mark Barber and Sheri Tally (Questionnaire 11), but as previously noted, the Court has severed and transferred any claims against those Defendants by separate order.

dental policies"); *Lueck v. Wathen*, 262 F. Supp. 2d 690, 696 (N.D. Tex. 2003) (citing *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983)) (explaining that prisoner's claim against assistant warden, who served on prison grievance committee and allegedly wrongfully denied prisoner's grievance, failed to state a claim where prisoner did not allege warden was personally involved in any constitutional violation, as "[p]ersonal involvement is an essential element in a civil rights action"); *see also Mouille v. City of Live Oak*, 977 F.2d 924, 929 (5th Cir. 1992) (citing *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987)) (providing that a supervisory official is not liable for the acts of his or her subordinates unless (1) (s)he affirmatively participated in an act that caused a constitutional deprivation, or (2) (s)he *implemented* an unconstitutional policy that resulted in injury to the plaintiff).

### 3. *Liberally construing his claim against the Doe Defendants, Salazar has stated sufficient facts to survive screening.*

Salazar asserts that "unknown" Doe Defendants "denied Hep. C treatment/cure" by declining to prescribe "the 12-week one pill per day regimen"—i.e., DAA medication. Compl. 3. In his questionnaire responses, Salazar attributes the denial of DAA medication to a policy implemented by, inter alia, Doe Defendants.  Questionnaire 11.  Salazar claims that the Doe Defendants work at TDCJ, UTMB, and Texas Tech University Health Sciences Center (TTUHSC). *Id.* at 16.

As discussed above, the AG previously informed the Court that TDCJ's "policies for treating Hepatitis C are created and set by the Correctional Managed Health Care Committee" (CMHCC)—a "statutorily created committee responsible for developing, implementing, and monitoring the correctional managed health care services for offenders." *Salazar v. U.T.M.B. Correctional Managed Care*, 5:17-cv-313-M-BQ (N.D. Tex.), ECF No. 47, at 1. The "CMHCC

is comprised at any given time of individuals from TDCJ, UTMB, and Texas Tech University Health Sciences Center." *Id.* at 1–2.

Although Salazar did not specifically name the CMHCC or its individual members as defendants, the Court liberally construes his pleadings, as it must at this stage, as alleging a claim against the CMHCC's committee members. *See Grant v. Cuellar*, 59 F.3d 523, 524 (5th Cir. 1995) ("apply[ing] less stringent standards to parties proceeding pro se than to parties represented by counsel"); *Shaw v. Briscoe*, 541 F.2d 489, 490 (5th Cir. 1976) (noting that a § 1983 "complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"); *see also* Questionnaire 11 (referencing "the committee" in stating that TDCJ's current "protocol" is to deny DAA medication). Distilled to its essence, Salazar asserts that persons working for "TDCJ, UTMB, TTUHSC, etc." violated his constitutional rights by implementing an unconstitutional policy of making Hepatitis C treatment decisions based on his APRI score as opposed to evaluating his condition through liver biopsies, FIB-4 tests, or FibroScans, which Salazar claims are the recommended, and most accurate, methods of evaluation. Questionnaire 7–11, 16. Salazar similarly avers that treating Hepatitis C with DAA medication is "the prevailing standard of care" but Defendants are merely monitoring his condition through an outdated method of evaluation. *Id.* at 7–8. As a result of the alleged unconstitutional policy, and in turn, the denial of DAA medication, Salazar claims that he is suffering from the following: "chronic abdominal pain (around the liver), headaches, skin condition, muscle weakness, fatigue, stress, anxity [sic], [and] brain fog." *Id.* at 11.

Based on the foregoing, the undersigned concludes that Salazar is attempting to allege that the CMHCC committee members enacted an unconstitutional policy in violation of his Eighth Amendment rights, and his allegations, taken as true, state a claim sufficient to survive screening.

*See, e.g., Grumbles v. Livingston*, 706 F. App'x 818, 819–20 (5th Cir. 2017) (affirming district court's dismissal at summary judgment stage prisoner's claim that defendants were deliberately indifferent in their treatment of prisoner's Hepatitis C infection); *Hood v. Collier*, Civil Action No. 3:18-0295, 2019 WL 3412440, at *7 (S.D. Tex. July 29, 2019) (dismissing on summary judgment, rather than upon initial screening, prisoner's claim "that the [Hepatitis C] Policy establishing a protocol for treatment of TDCJ inmates violates his Eighth Amendment rights," where medical records showed defendants were monitoring prisoner's condition and, based on Fifth Circuit precedent, prisoner's claim amounted to a disagreement in care); *Withers v. Soloway*, Civil Action No. 3:17-CV-0119, 2018 WL 8801417, at *8–10 (S.D. Tex. Aug. 27, 2018) (granting summary judgment in favor of defendants on prisoner's claim that defendants failed to prescribe treatment in accordance with "modern protocol," where evidence showed treatment decisions were based on effectiveness—not refusal to treat). Accordingly, the undersigned recommends that the District Court order: (1) the AG to identify the individual committee members on the CMHCC responsible for creating, adopting, and/or modifying the current TDCJ Hepatitis C treatment policy; and (2) that those individuals be served and required to file an answer, motion, or other responsive pleading to Salazar's policy claim.

**D.    Salazar has not pleaded adequate facts demonstrating that Defendants Sandoval and Parmer acted with deliberate indifference to a serious medical need.**

Under the Eighth Amendment, prison officials have a duty to provide adequate medical care. *Rogers v. Boatright*, 709 F.3d 403, 409 (5th Cir. 2013). An inmate seeking to establish an Eighth Amendment violation in regard to medical care must allege facts showing that prison officials were deliberately indifferent to his serious medical needs. *Morris v. Livingston*, 739 F.3d 740, 747 (5th Cir. 2014) (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)) (explaining that because "only the 'unnecessary *and wanton* infliction of pain' implicates the Eighth Amendment,

a prisoner advancing such a claim must, at a minimum, allege 'deliberate indifference' to his 'serious' medical needs" (emphasis in original)). Deliberate indifference "is an extremely high standard to meet" (*Brewster v. Dretke*, 587 F.3d 764, 770 (5th Cir. 2009) (quotations omitted)), and requires satisfaction of both an objective and a subjective component. *Rogers*, 709 F.3d at 410. An inmate must first prove objective exposure to a substantial risk of serious bodily harm. *Gobert v. Caldwell*, 463 F.3d 339, 345 (5th Cir. 2006). As to the subjective component, a prison official acts with deliberate indifference only where he (1) knows the inmate faces a substantial risk of serious harm and (2) disregards that risk by failing to take reasonable measures to abate it. *Id.* at 346; *see also Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999) (stating that prison official is not liable for denial of medical treatment unless he knows of and disregards an excessive risk to inmate health or safety).

A prison official's "failure to alleviate a significant risk that the official should have perceived, but did not, is insufficient to show deliberate indifference." *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001) (quoting *Farmer v. Brennan*, 511 U.S. 825, 838 (1994)) (alterations and internal quotation marks omitted). "[D]eliberate indifference cannot be inferred merely from negligent or even a grossly negligent response to a substantial risk of serious harm." *Thompson v. Upshur Cty.*, 245 F.3d 447, 459 (5th Cir. 2001). Instead, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Brewster*, 587 F.3d at 770 (quoting *Farmer*, 511 U.S. at 837); *see Lawson v. Dall. Cty.*, 286 F.3d 257, 262 (5th Cir. 2002) (holding that deliberate indifference is a "subjective inquiry," and inmate must show prison official was actually aware of risk of harm and consciously ignored it).

Allegations of malpractice, negligence, or unsuccessful treatment fail to establish deliberate indifference. *Gobert*, 463 F.3d at 346. Similarly, an inmate's disagreement with the medical treatment provided does not give rise to a constitutional claim (*Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997)), and a delay in delivering medical care creates constitutional liability only where the alleged deliberate indifference results in substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993). In sum, an inmate must demonstrate that prison staff "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs" to state a viable Eighth Amendment claim for deliberate indifference to serious medical needs. *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985).

### 1. *Defendant Sandoval*

Salazar alleges that Defendant Sandoval "knew of the risks associated w/out treatment of [his] liver w/ the [DAA] drugs but chose a course of monitoring instead." Questionnaire 15. Salazar contends that Defendant Sandoval's alleged refusal to prescribe him DAA medication amounts to a complete failure to treat his serious medical need. *See id.* at 16. Salazar acknowledges that Defendant Sandoval examined him and made a medical judgment; Salazar merely believes that she should have provided a different type of treatment. *See id.* at 15–16.

As pleaded, Salazar has not demonstrated that Defendant Sandoval intentionally treated him incorrectly or otherwise engaged in conduct evidencing a wanton disregard for his serious medical needs. Even taking as true Salazar's claim that Sandoval refused to prescribe him DAA medication to treat his Hepatitis C, "this allegation, without a further showing of deliberate indifference to serious medical needs, does not rise to the level of a constitutional violation." *Morgan v. Tex. Dep't of Criminal Justice McConnell Unit*, 537 F. App'x 502, 507 (5th Cir. 2013).

Salazar avers that Defendant Sandoval based her medical decision on his APRI score (pursuant to UTMB-CMC's policy) but asserts that she should have made a treatment decision on other criteria—e.g., liver biopsy—or simply prescribed him the DAA medication because he has Hepatitis C. *See* Questionnaire 7, 15–16.

Salazar provides no facts, however, either in his Complaint or questionnaire responses, demonstrating Defendant Sandoval was aware of facts supporting an inference that a substantial risk of serious harm existed *and* that she in fact drew such an inference. At best, Salazar alleges Defendant Sandoval failed to alleviate a significant risk she *should have* perceived but did not— such conduct does not constitute deliberate indifference. *Domino*, 239 F.3d at 756. Construed most favorably, Salazar's allegations amount to nothing more than a disagreement with treatment, which does not support a claim for deliberate indifference under § 1983. *See Domino*, 239 F.3d at 756; *see also Estelle*, 429 U.S. at 293 (explaining that the question of whether "additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment"); *Grumbles*, 706 F. App'x at 819–20 (affirming dismissal on summary judgment prisoner's claim that defendants were deliberately indifferent by denying him treatment for his Hepatitis C where records showed "that, consistent with TDCJ Hepatitis C policy, [prisoner] was followed in a Hepatitis C chronic care clinic while in TDCJ custody and that his Hepatitis C was monitored and evaluated periodically through chronic care visits and medical testing" and concluding that prisoner's allegation amounted to a disagreement in treatment); *Hendrix v. Aschberger*, 689 F. App'x 250, 250 (5th Cir. 2017) (affirming dismissal as frivolous prisoner's claim that "defendants refused to refer him to specialists, failed to provide him with medications that could cure his Hepatitis C, and provided him with ineffective pain medications" because prisoner's "arguments regarding his medical care amount to a disagreement with the treatment

13

provided and are insufficient to show a constitutional violation"); *Davidson v. Tex. Dep't of Criminal Justice, Institutional Div.*, 91 F. App'x 963, 965 (5th Cir. 2004) (explaining that prisoner had failed to state a claim for deliberate indifference based on his allegation that defendants declined to prescribe him interferon therapy—a treatment for Hepatitis C—characterizing his claim as one based on a disagreement in care).

The authenticated medical records further support the conclusion that Salazar's claim against Defendant Sandoval constitutes nothing more than a disagreement over treatment. The records reflect that TDCJ medical professionals monitor Salazar through the chronic care clinic. He is examined approximately every six months, during which time staff complete laboratory tests to monitor his condition. Specifically, medical personnel examined Salazar on September 13, 2017, March 7 and August 9, 2018, as well as February 19 and August 7, 2019, and documented that Salazar's APRI score was low; therefore, he did not meet the criteria for an additional treatment referral. During many of these visits, staff also noted that Salazar denied symptoms demonstrating a change in condition, e.g., clay colored stools, fatigue, and abdominal pain. Thus, despite Salazar's claim that Defendant Sandoval acted with deliberate indifference to his Hepatitis C infection, the records reflect that TDCJ medical staff have consistently monitored his condition and acted accordingly. The district court should therefore dismiss Salazar's Eighth Amendment claim against Defendant Sandoval.

### 2. *Defendant Parmer*

Salazar asserts that he spoke with Defendant Parmer on one occasion, August 8, 2017, to discuss whether Salazar could "get treatment before [his] condition worsens to the point of no return." Questionnaire 15; *see* Questionnaire 12. Parmer allegedly responded that Defendant Sandoval had reported that Salazar's APRI score did not qualify him for treatment, but if Salazar

"g[o]t bad [TDCJ would] reevaluate [him]." Questionnaire 15. Salazar contends that Defendant

Parmer's denial of DAA medication, in accordance with Defendant Sandoval's medical opinion,

violated his constitutional rights. *See id.*

Salazar's allegations fail to state a claim for several reasons. First, Salazar has not pleaded

facts demonstrating that Defendant Parmer *personally* violated his constitutional rights. To the

contrary, Salazar acknowledges that Defendant Parmer merely told Salazar that he did not qualify

for treatment based on Defendant Sandoval's medical opinion. *See id.* at 12, 15. "Personal

involvement is an essential element of a civil rights cause of action." *Thompson v. Steele*, 709

F.2d 381, 382 (5th Cir. 1983). Absent facts showing that Defendant Parmer was actually involved

in his medical care, Salazar cannot state a claim under § 1983. *See, e.g., Harris v. Cockrell*, 84 F.

App'x 438, 439 (5th Cir. 2004) (affirming district court's dismissal of prisoner's claim against

prison physician, where prisoner did not "allege that [physician] was personally involved in his

medical treatment").

Even assuming Defendant Parmer's personal involvement in Salazar's treatment decisions,

however, Salazar makes no factual assertions supporting a reasonable inference that he faced a

substantial risk of serious harm, i.e., the state of his Hepatitis C condition was such that additional

medical treatment was required. Other than the expressed desire to receive medical treatment in

the form of DAA medication, Salazar does not claim that he provided Defendant Parmer with any

facts, e.g., specific areas of the body affected, his particular symptoms, that would show he

required immediate or additional medical care. That is, Salazar does not allege he suffered visible

injuries or described his symptoms to Defendant Parmer during their one meeting such that "even

a layperson would easily recognize" he needed immediate medical treatment.[6] Absent such

---

[6] As discussed above, the authenticated records reflect that TDCJ medical staff consistently monitored Salazar's condition, further belying Salazar's claim that Defendant Parmer, or any Defendant, acted with deliberate indifference.

assertions, he cannot state a viable constitutional claim for denial of medical care. *See Batiste v. Theriot*, 458 F. App'x 351, 356 (5th Cir. 2012) (reversing denial of summary judgment on qualified immunity where officers at scene never thought serious medical emergency existed; because "harm was anything but obvious" decedent's situation "simply [did not] rise to the level of a serious medical need . . ."); *Borgos v. Laperton*, Civil No. 3:16-CV-2936-N-BK, 2017 WL 2912739, at *4 (N.D. Tex. June 10, 2017), *R. & R.* adopted, 2017 WL 2902679 (N.D. Tex. July 7, 2017) (recommending dismissal at screening of constitutional claim for denial of medical care for failure to plead serious medical condition—plaintiff provided no information about the extent of his condition or symptoms endured or facts showing medical need so apparent doctors should have recognized care or medication was required). The undersigned therefore recommends dismissal of Salazar's Eighth Amendment claim against Defendant Parmer.[7]

---

[7] To the extent Salazar's Complaint can be construed as alleging an Eighth Amendment deliberate indifference claim against the Doe Defendants based on any alleged "deni[al] [of] Hep. C treatment"—as opposed to the enactment or implementation of a policy that violated his rights—his claim should similarly be dismissed. Salazar has not pleaded any facts showing that the Doe Defendants knew of, and disregarded, a substantial risk of serious harm by declining to prescribe him DAA treatment. *See* Compl. 3–4; Questionnaire 16–17 (claiming only that the Doe Defendants violated his constitutional rights by "caus[ing] [him] to be excluded from participation in programs & denied access to services w/in TDCJ b/c of [his] disability" and claiming that Doe Defendants' decision to deny DAA medication contravenes the current standard of care).

The Court also notes that by alleging that Doe Defendants excluded him from participation in TDCJ services because of his disability, Salazar appears to allege a claim under the Americans with Disabilities Act (ADA) or the Rehabilitation Act of 1973 (RA). Salazar never explicitly states, however, that he is attempting to assert a claim under the ADA or RA in his Complaint or questionnaire responses. Compl. 3–4; Questionnaire 7–18. In addition, Salazar essentially repleads his denial of medical care claim as one under the ADA and RA. Compl. 3–4; Questionnaire 7–18. "A claim is not proper under the ADA [or RA] if it is simply a restatement of a claim for the denial of medical care." *Hale v. Abangan*, Civil Action No. 3:15-cv-170-CWR-FKB, 2018 WL 1053520, at *3 (S.D. Miss. Jan. 26, 2018) (citing *Walls v. Tex. Dep't Criminal Justice*, 270 F. App'x 358, 359 (5th Cir. 2008)). Finally, and most significantly, Salazar has not pleaded any facts supporting one of the primary elements required to state a claim under the ADA and RA—that his Hepatitis C condition renders him disabled within the meaning of the ADA or RA. "It is well established that '[m]erely having an impairment . . . does not make one disabled for purposes of the ADA [or the RA].'" *Hale v. King*, 642 F.3d 492, 501 (5th Cir. 2011) (quoting *E.E.O.C. v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 614 (5th Cir. 2009)). Absent pleading facts showing how his claimed impairments substantially limit the performance of a major life activity, Salazar fails to state a claim for relief under the ADA or RA. *See id.* (noting that although plaintiff asserted he suffered from, inter alia, Hepatitis C, plaintiff did not "detail the impact of these conditions on [plaintiff's] ability to perform major life activities" but "instead argued that he needed certain medical treatment or he would 'continue to suffer substantial pain, anxiety, and potential complications of a life threatening nature'"); *Willis v. Catahoula Corr. Ctr.*, No. 09-cv-1510, 2010 WL 2710405, at *4 (W.D. La. May 14, 2010) ("To obtain relief under the ADA, a plaintiff must demonstrate that his condition significantly impairs a major life activity,

16

### III.    Recommendation

For the foregoing reasons, the undersigned recommends that the United States District Judge **DISMISS WITH PREJUDICE**, in accordance with 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, Salazar's claims against Defendants UTMB-CMC, Michael Parmer, Melonie Sandoval, and J. Parmenter.

With respect to Salazar's claim against the CMHCC committee members based on an allegedly unconstitutional policy, it is the **RECOMMENDATION** of the magistrate judge that the United States District Court order Defendants to answer or otherwise plead to the foregoing claim.

### IV.    Right to Object

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2017); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Report and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

---

and plaintiff has made no such demonstration."). Thus, to the extent Salazar attempts to allege a claim against Defendants under the ADA and RA, it is without merit.

Dated: January 27, 2020

D. GORDON BRYANT, JR.
UNITED STATES MAGISTRATE JUDGE